IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

TIMOTHY LEE STEWART, SR.,

                    Plaintiff,

     v.                                      OPINION and ORDER

DREW SEVERSON, AISHA BRUNTON,             21-cv-555-jdp
MICHAEL PALMER, and JASON BIER,

                    Defendants.

---

Plaintiff Timothy Stewart alleges that when he went to the Janesville Police Department to make a complaint against defendant Sergeant Drew Severson, phone dispatchers blocked him from filing that complaint by sending Severson out to field it, and that Severson and another officer peppered Stewart with insults and racial slurs rather than allow him to file the complaint. I granted Stewart leave to proceed on First Amendment retaliation and Fourteenth Amendment equal protection race discrimination and "class of one" claims. *See* Dkts. 15 and 31. There are two sets of defendants: (1) Janesville police officers Severson and Jason Bier; and (2) dispatchers Michael Palmer and Aisha Brunton, who work for Rock County.

This order addresses numerous filings by the parties. Chief among them are both sides' cross-motions for summary judgment. Dkts. 90; 102; 103. For the reasons stated below, I will grant defendants' motions for summary judgment, deny Stewart's motion for summary judgment, and dismiss the case. I will also sanction Stewart for his misconduct in litigating this case.

PRELIMINARY MATTERS

**A.  Stewart's responses to the court's December 18, 2023 order**

In my previous order I noted that Stewart filed multiple submissions that he called motions for summary judgment or that in part responded to defendants' summary judgment motions. Dkt. 136, at 5. But none of his filings fully complied with this court's procedures for briefing summary judgment motions. I stated that I would treat Dkt. 102 as Stewart's motion for summary judgment. *Id.* at 6. I also gave him a final chance to squarely respond to defendants' motions for summary judgment by filing proper responses to defendants' proposed findings of fact and any supporting evidence not already on the docket. *Id.* In particular, I directed him to submit a sworn declaration explaining his firsthand account of his interactions with defendants and addressing the bodycam video evidence that defendants provided.

Stewart did not comply with my directions. He has filed a series of responses, Dkts. 137; 138; 142. In Dkt. 137, he asked for more time to submit his summary judgment opposition, but he quickly followed with a 98-page response, Dkt. 138, so I will deny his request for extension of time as moot.

As with many of Stewart's filings, his responses are extremely long and difficult to follow. Stewart did not focus on directly responding to defendants' proposed findings of fact, as I asked, instead providing only very brief summaries of the events at issue in this case, focusing on (1) the ensuing police investigation into his complaints about Severson; and (2) motions to compel discovery or for discovery sanctions against defendants. Stewart repeatedly suggests that defendants or other law enforcement officials intentionally destroyed Defendant Bier's bodycam footage and audio footage of the phone calls to the Rock County dispatch defendants.

Stewart's arguments are untimely and they address issues immaterial to the resolution of his claims. I did not allow Stewart to proceed with claims about the investigation following his interactions with Severson, so his focus on those events is misplaced. Stewart's new attempts at motions to compel discovery fail for the same reason as his previous ones: he still hasn't provided the court with his actual discovery requests to defendants or their responses, which was the reason that I denied his previous motions to compel and is reason enough to deny these motions too. *See* Dkt. 136, at 3. His new motions also come too late for purposes of summary judgment. In any event, Stewart doesn't persuasively suggest that anything in the audio or video footage would alter the outcome of this case. The record already contains video evidence (Severson's bodycam footage) showing what happened in the interactions between Stewart and the Janesville police defendants, so Bier's bodycam footage would be cumulative. Stewart has stated enough about his phone calls with the Rock County defendants to provide his version of events without the need for audio. And in ruling on defendants' motions for summary judgment I will provisionally decide any genuinely disputed fact in Stewart's favor. Nonetheless, even after doing so, Stewart's claims do not survive summary judgment. I will deny his motions to compel discovery and for discovery sanctions.

Stewart has also renewed his motion for the court's assistance in recruiting him counsel. Dkt. 138-1, at 50. There's no question that Stewart has had difficulty following my instructions and presenting his case concisely, but that still doesn't suggest that the case is too complex for him. Ultimately, Stewart's problem isn't his skill in litigating his claims, it is that the video evidence contradicts his allegations. I will deny his renewed motion for counsel.

Stewart asks to transfer the case "to Washington, D.C.," Dkt. 137-3, but there isn't a valid reason to do that so I will deny his motion.

3

I turn to the parties' cross-motions for summary judgment.

SUMMARY JUDGMENT MOTIONS

**A.  Undisputed facts**

The following facts are undisputed unless otherwise noted.

Late in the night of July 26, 2021, Stewart went to the Janesville Police Department. Once there, he placed a call to the police at about 11:45 p.m.; he says that he used the non-emergency number, but it is undisputed that the call was received by defendant Michael Palmer, a 911 dispatcher at the Rock County Communications center.

Stewart says that he told Palmer that he was invoking his constitutional right to make an anonymous complaint to police about "police corruptions occurring between" Andrew Banks, who was a neighbor of his, and defendant Janesville Police Sergeant Drew Severson. He adds that he did not want to have contact with Severson. Palmer states that Stewart told him "that he was having issues with a neighbor and that he wanted to file a complaint about his neighbor who he claimed was having sex and doing drugs with a Janesville police department officer." Dkt. 104, ¶ 10. Palmer states that Stewart told him that he did not want to speak with any officer named Drew but did not provide the last name of the officer. Palmer's report of the call noted that Stewart "doesn't want to speak with any Ofc named 'Drew'" and that Stewart would be waiting outside on a bench. Dkt. 93-1, at 3.

Palmer coded the call as a civil dispute, "priority 3," which meant that there was no immediate danger to anyone. Palmer's report was sent to another dispatcher, defendant Aisha Brunton, to relay the call and information to Janesville police.

4

Defendant Severson was on patrol near the police station and saw the dispatch information stating that Stewart was waiting outside but did not want to talk to an officer named Drew. Severson, a sergeant who supervised officers, including one named Drew, did not think that Stewart's note applied to him.

Severson approached Stewart at about 12:13 a.m. Severson's bodycam footage recorded their interaction. *See* Dkt. 94-1 (placeholder entry for video footage). Severson didn't identify himself. Stewart discussed a dispute he had with his neighbor Banks about a vehicle that he had purchased from Banks. The conversation turned to other problems that Stewart said that he had with Banks, including that Banks was doing drugs and having sex with Janesville police officers. Stewart mentioned that one of the officers in question was named "Severson," and Severson responded, "You don't say it was me," "I'm pretty sure my wife would have an issue with that," and "It shouldn't have been me, 'cause I don't know no Andrew Banks." *Id.* at 5:50; 6:16; 6:37. They continued to talk. Stewart stated that he wanted to file a police report against Banks for fraudulent sale of a vehicle and that that he wanted information about Banks like his full name and birthdate so that he could go to Madison to file a lawsuit against him. Severson told Stewart that the police couldn't give him personal information about another person but that he should make an open records request instead. Stewart became agitated, stating that he told dispatch that he didn't want to talk to Severson, that his rights had been violated, and that Severson was blocking his efforts at a police report. Stewart walked away to call for another officer. The conversation took about 13 minutes.

Severson radioed for another officer, stating that Stewart was "having some issues," which he says meant that he was concerned for Stewart's mental health. *Id.* at 12:53. Stewart called the police again, getting defendant Brunton, who dispatched Janesville police. Defendant

5

Officer Bier states that he responded to the scene after getting a message from dispatch. Severson went back to his squad car and then came back to join the conversation between Stewart and Bier. Severson states that he remained at the scene because was concerned about Bier's safety; he thought that Stewart appeared unstable.

Severson's bodycam footage recorded this second interaction. *See* Dkt. 94-2 (placeholder entry for video footage). Stewart objected to Severson staying; Severson stated that as a sergeant he would normally field complaints about officers, and that the dispatcher note didn't say that Stewart wanted to avoid Severson.

Severson stayed as Stewart proceeded to talk to Bier about Banks' alleged misconduct. Bier asked what he could do for Stewart, with Stewart responding that he would like Bier to file a complaint against Banks for fraudulent sale of a vehicle and give Stewart information about Banks so that he could file a lawsuit against Banks and start a "John Doe" investigation. Stewart discussed Banks doing drugs and having sex with police officers and his fear of retaliation by Janesville police. Bier asked Stewart if he was taking any medication; Stewart responded that that was irrelevant. Stewart showed Bier a legal document he was filling out and said that he wanted Bier to give him personal information about Banks to assist him in filling out the document. Both Bier and Severson told Stewart that they could not give him Banks's personal information and that he would have to look it up online. Stewart reiterated that he didn't want to talk to Severson, and Stewart ended the conversation and walked away. This conversation took about 12 minutes.

About a month later, Stewart met twice with non-defendant Janesville Police Lieutenant Mike Blaser to discuss Stewart's allegations that defendant Severson was in a relationship with Banks and providing Banks with drugs, information about the drug trade, and ammunition.

Stewart submitted a formal complaint that Blaser investigated. Blaser concluded that Stewart's report was false.

I will discuss additional facts as they become relevant to the analysis.

## B. Analysis

Both sides move for summary judgment. Summary judgment is appropriate if the moving party shows that there is no genuine dispute of material fact, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). For each motion, I must construe the facts and draw all reasonable inferences from those facts in favor of the nonmovant. *Wis. Cent., Ltd. v. Shannon*, 539 F.3d 751, 756 (7th Cir. 2008). "Cross-motions must be evaluated together, and the court may not grant summary judgment for either side unless the admissible evidence as a whole—from both motions—establishes that no material facts are in dispute." *Bloodworth v. Vill. of Greendale*, 475 F. App'x 92, 95 (7th Cir. 2012).

### 1. Rock County dispatcher defendants

Stewart sues Rock County dispatchers Palmer and Brunton and Janesville police officers Severson and Bier. I'll start with the Rock County dispatchers. I granted Stewart leave to proceed against Palmer and Brunton on First Amendment retaliation claims and Fourteenth Amendment equal protection "class of one" claims for interfering with his efforts to make an anonymous complaint against Severson.

To prevail on a First Amendment retaliation claim, a plaintiff must show that: (1) he engaged in activity protected by the First Amendment; (2) the defendant took actions that would deter a person of "ordinary firmness" from engaging in the protected activity; and (3) the First Amendment activity was at least a "motivating factor" in the defendant's decision to take those actions. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009). To win on a class-of-one

equal protection theory, a plaintiff must show that he was treated "intentionally . . . differently from others similarly situated" for no rational reason. *D.S. v. E. Porter Cty. Sch. Corp.*, 799 F.3d 793, 799 (7th Cir. 2015) (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)).

In his complaint, Stewart alleged that he went to the police department and called switchboard operators from inside the building, asking to file a complaint against Severson. The operators called down Severson and an unidentified officer (who we now know is Bier), who hurled insults and racial slurs at Stewart until he left the station. I took this to mean that Stewart came to the station during normal business hours to file a complaint against an officer, only to have the switchboard operators call down the very officer Stewart was complaining against and who berated Stewart rather than helping him. This suggested that both the switchboard operators and the officers blocked his attempts at complaining about Severson.

The facts produced by the parties at summary judgment diverge significantly from Stewart's complaint, giving a much different context for defendants' actions. Assuming that Stewart's complaints about Severson are true, Stewart has a First Amendment-protected right to complain about him. But Stewart did not walk into the police station during normal business hours to file a complaint. Rather, he phoned the police in the middle of the night, which changes how any reasonable dispatcher or officer would have interpreted Stewart's complaints and limited their plausible options for response.

The dispatcher defendants say that they didn't believe that Stewart was trying to file a formal complaint about a Janesville officer as opposed to reporting a "civil dispute" that might ordinarily be reported that time of night. They say that if they had thought that Stewart was trying to file a formal complaint against a Janesville police officer, they wouldn't have dispatched a Janesville officer to take that complaint. Instead they would have told Stewart to

make the complaint to the police chief during normal business hours. Stewart doesn't present evidence or argument explaining what the dispatchers should have done differently, other than not call Severson to the scene.

The dispatcher defendants also dispute whether Stewart specifically mentioned defendant Severson in his phone calls, but even accepting Stewart's statements that he indeed discussed Severson, the record doesn't show that the dispatchers knowingly sent Severson to deal with a complaint against himself.

Defendant dispatcher Palmer's actions were limited to taking Stewart's first call and recording only that Stewart said not to send an officer named Drew. Even if Stewart told Palmer not to send Drew Severson yet Palmer neglected to put Severson's full name in his report, no reasonable jury could conclude that Palmer was motivated to do so by a desire to retaliate against Stewart for complaining about Severson or to single him out for purposes of a "class of one" claim. Negligence alone doesn't violate the Constitution. *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010).

As for defendant Brunton, she dispatched Janesville police to respond to Stewart's first call based on Palmer's report. She did not know that Stewart had specifically asked not to see defendant Severson. And then when Stewart called back, she sent another officer to the scene. There's no evidence suggesting that she intended to retaliate against Stewart for complaining about Severson or to single him out for mistreatment. Rather, she simply sent officers to respond to his midnight phone calls, the only reasonable thing that she could have done.

Based on the parties' proposed findings of fact and supporting evidence, no reasonable jury could conclude that Palmer or Brunton violated Stewart's constitutional rights under either a retaliation or class-of-one theory. So I will grant the Rock County defendants' motion

for summary judgment on these claims and deny Stewart's cross-motion for summary judgment.

### 2. Janesville officer defendants

I granted Stewart leave to proceed against Severson and Bier on (1) First Amendment retaliation claims; (2) "class of one" Fourteenth Amendment equal protection claims; and (3) race-based equal protection claims for thwarting his attempts at filing a complaint against Severson, including by hurling insults and racial slurs at him.

I'll start with Stewart's retaliation claims. As with Stewart's claims against the dispatchers, the facts produced at summary judgment are wildly different from Stewart's initial allegations. For instance, there's no evidence that the officers arrived on the scene specifically to block Stewart from filing a formal officer complaint at the police station; rather, they responded to the dispatchers' midnight calls, as any officer would do.

The video footage of the officers' conversations with Stewart conclusively shows that they did not retaliate against Stewart for attempting to file a complaint against Severson. *See United States v. Norville*, 43 F.4th 680, 682 (7th Cir. 2022) ("a video record of the events at issue can evaporate any factual dispute that would otherwise exist"). They didn't take the adverse action that Stewart identified in his complaint—blocking Stewart from filing an officer complaint. Stewart never requested to file such a complaint, even during the first half of his conversation with Severson, before he was aware that was talking to Severson. Instead, Stewart wanted to file a report against Banks for fraudulent sale of a vehicle and he wanted defendants to give him Banks's personal information for his use in a civil lawsuit against Banks. Stewart did mention Severson's alleged involvement with Banks, but even so Stewart did not express that he meant to file a complaint against Severson. Stewart eventually expressed displeasure

10

with Severson having answered his call and Severson's refusal to give him Banks's personal information, so he requested another officer. When Bier arrived, Severson stayed but allowed Bier to handle the conversation. Stewart pressed Bier to give him Banks's personal information, and Bier refused. Stewart ended the conversation because of this refusal, not because the officers were blocking him from filing an officer complaint. I did not grant Stewart leave to proceed on claims regarding the officers' refusal to give Stewart Banks's personal information.

Moreover, even if any of the officers' actions—or even Severson's mere presence at the scene—could be perceived as actions adverse to Stewart, nothing they did would deter a person of "ordinary firmness" from engaging further in the protected activity—complaining about an officer. Stewart indeed filed a formal officer complaint against Severson with Lieutenant Blaser about a month later. The court applies an objective test, not a subjective test, to determine whether the alleged retaliatory actions would deter someone from engaging in future First Amendment protected activity. *See, e.g.*, *Surita v. Hyde*, 665 F.3d 860, 878 (7th Cir. 2011). But nothing in the video footage suggests that defendants were attempting to intimidate Stewart out of filing a formal officer complaint, as Stewart originally alleged. The only reasonable inference from the circumstances here is that a person of ordinary firmness would have felt free to later file an officer complaint through the normal channels, which is exactly what Stewart did. So I will grant the Janesville defendants' motion for summary judgment on his retaliation claims and deny Stewart's cross-motion for summary judgment.

Stewart's class-of-one equal protection claims fail for largely the same reasons. Stewart alleged that defendants blocked him from complaining about Severson despite others being allowed to make complaints of police misconduct. But the evidence here shows that he didn't attempt to file an officer complaint, instead focusing on a complaint against Banks for

11

fraudulent sale of a vehicle and his requests for Banks's personal information. And in any event, "[n]ormally, a class-of-one plaintiff will show an absence of rational basis by identifying some comparator—that is, some similarly situated person who was treated differently." *Fares Pawn, LLC v. Ind. Dep't of Fin. Insts.*, 755 F.3d 839, 845 (7th Cir. 2014). Stewart doesn't provide any evidence suggesting that officers treated him any differently than other citizens making late-night phone calls to police. Stewart alleged that the Janesville defendants repeatedly mocked his mental state and used racial slurs against him. But those allegations are not supported by the video footage. Neither officer uttered racial slurs or other remarks. Bier asked Stewart whether he was taking any medication, which Stewart clearly didn't like, but that one comment is not nearly enough to sustain an equal protection claim. *Ingraham v. Wright*, 430 U.S. 651, 674 (1977) ("There is, of course, a *de minimus* level of imposition with which the Constitution is not concerned.").

As for Stewart's race-based equal protection claims, he alleged that defendants repeatedly used racial slurs against him to block him from reporting Severson's misconduct. The video shows that this simply did not happen: neither Severson nor Bier used any racial slurs or otherwise said anything that suggested that Stewart's race informed their decision making that night.

Because no reasonable jury could find in Stewart's favor on any of his claims against the Janesville defendants, I will grant their motion for summary judgment in its entirety and deny Stewart's cross-motion for summary judgment.

SANCTIONS

The Janesville defendants filed documents stating that Stewart called counsel a liar and threatened to "come after" him and that Stewart would "remember his name," calling himself a "fuckin' gangsta" and threatening to file additional lawsuits against counsel and other Janesville officials for what he perceived as misconduct on their part. Dkts. 42; 50; 51. They also state that Stewart knowingly made false statements in his discovery responses, particularly by continuing to state that defendants Severson and Bier aimed racial slurs and other derogatory remarks at him during their interactions even though bodycam footage provided by defendants does not include any such language. Dkt. 59.

I ordered Stewart to show cause why he shouldn't be sanctioned. Dkt. 136, at 4. Although Stewart's responses to my order are difficult to follow, he does state that he did not make any threatening comments and that any remarks he made to counsel about "the show down battle" concerning this lawsuit were misconstrued by counsel as threatening. *See* Dkt. 137-1, at 4–6. Ultimately, I conclude that it is unnecessary to hold an evidentiary hearing to resolve the dispute about Stewart's alleged threats, because I am already dismissing the case on the merits, and because he has committed other misconduct for which I will sanction him.

"A district court has inherent power to sanction a party who 'has willfully abused the judicial process or otherwise conducted litigation in bad faith.'" *Secrease v. W. & S. Life Ins. Co.*, 800 F.3d 397, 401 (7th Cir. 2015) (quoting *Salmeron v. Enterprise Recovery Systems, Inc.*, 579 F.3d 787, 793 (7th Cir. 2009)). I have previously sanctioned Stewart by barring him from filing additional baseless cases seeking to invalidate governmental legislative or regulatory actions, *see Stewart v. Evers*, No. 23-cv-52-jdp, 2023 WL 1401817, at *2 (W.D. Wis. Jan. 31,

2023), and barring him from filing additional complaints containing baseless allegations of a conspiracy among his landlord, neighbors, and the police, *see Stewart v. Arndt*, No. 23-cv-465-jdp, slip op. at 2–3 (Jan. 16, 2024).

Nonetheless, Stewart continues to commit misconduct. As the Janesville defendants point out in their filings, Stewart alleged and continued to press equal protection claims that Severson and Bier repeatedly used racial slurs against him to block him from filing an officer complaint. The video evidence conclusively shows that defendants did not utter any racial slurs or other demeaning racial comments. In short, Stewart completely fabricated these allegations, which merits an additional sanction.

Dismissal of this case wouldn't be an effective sanction because I am already dismissing it on the merits. Thus I conclude that it is appropriate to sanction Stewart by barring him from bringing new lawsuits in this court without first prepaying the entire filing fee (otherwise known as filing "in forma pauperis"). The only suits that Stewart may file in this court without full payment of the fee are habeas corpus petitions relating to a criminal conviction. Any other civil lawsuit that Stewart files without full prepayment will be docketed and summarily dismissed. After two years, Stewart may file a motion asking me to lift or modify this filing bar.

I also note that Stewart's filings in this and other cases continue to be extremely long, disorganized, and difficult to follow. Stewart has submitted dozens of filings in this case encompassing over a thousand pages litigating this relatively simple case in which video revealed the key interactions; there was no need for him to file a blizzard of longwinded submissions. Opposing counsel and the court have in turn unnecessarily expended significant resources reviewing these filings. So going forward, no pleading, motion, or brief that Stewart files in any lawsuit in this court may exceed ten pages, unless he asks for permission to file a

longer document and the court grants him permission. Stewart may attach evidentiary materials longer than ten pages to his filings, but those materials must be docketed as attachments. I may disregard any filing that does not conform to this sanction.

The Janesville defendants ask that I order Stewart to pay for its reasonable costs and attorney fees incurred in responding to his meritless motions to compel discovery. Dkt. 139, at 6–7. Federal Rule of Civil Procedure 37 gives the Court discretion to limit or deny sanctions where other circumstances make such an award unjust. Fed. R. Civ. P. 37(a)(5)(B). I will deny their motion because of Stewart's indigence and the obvious difficulties he has had litigating the case as a pro se litigant.

Both sets of defendants state that they request costs; they may seek costs in accordance with Federal Rule of Civil Procedure 54.

One final point. Stewart still has a few other open cases against Janesville defendants, with the same counsel representing those defendants. I expect Stewart to take my instructions in this and other cases seriously and to conform his behavior to those instructions. He should take extra care to treat opposing counsel with respect, as all parties are expected to do in this court. Any further misconduct by Stewart may result in dismissal of all of his open cases and a full filing bar in this court.

ORDER

IT IS ORDERED that:

1. Plaintiff Timothy Stewart's motion for an extension of time to respond to the court's December 18, 2023 order, Dkt. 137, is DENIED as moot.

2. Plaintiff's motions to compel discovery or for discovery sanctions, Dkts. 137 and 138, are DENIED.

3. Plaintiff's motion to transfer the case, Dkt. 137-3, is DENIED.

4. Plaintiff's renewed motion for the court's assistance in recruiting him counsel, Dkt. 138-1, is DENIED.

5. Plaintiff's motion for summary judgment, Dkt. 102, is DENIED.

6. Defendants' motions for summary judgment, Dkts. 90 and 103, are GRANTED.

7. The Janesville defendants' motion for discovery sanctions, Dkt. 139, is DENIED.

8. Plaintiff is sanctioned as set forth in the opinion above.

9. The clerk of court is directed to enter judgment accordingly and close the case.

Entered February 29, 2024.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge